UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
DAVID MITCHELL,

    Petitioner,

- against -

SUPERINTENDENT MICHAEL SHEAHAN,

    Respondent.
------------------------------------------------------------x

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D N.Y.

★ AUG 27 2015 ★

BROOKLYN OFFICE

**MEMORANDUM AND ORDER**

12-cv-3182 (SLT)

**TOWNES, United States District Judge,**

David Mitchell ("Petitioner") brings this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C § 2254, challenging his September 5, 2007 conviction for Manslaughter in the First Degree, Assault in the Second Degree, and Criminal Possession of a Weapon in the Second Degree in Richmond County, New York Supreme Court. For the following reasons, the petition is denied.

## BACKGROUND

### I. Relevant Factual History

The following facts are drawn from the record of proceedings before the state trial court. In view of Mitchell's conviction, the evidence presented at trial is summarized in the light most favorable to the verdict. *See Garbutt v. Conway*, 668 F.3d 79, 80 (2d Cir. 2012).

#### A. Alleged Crime

On October 9, 2006, Petitioner and his associates, Angel Irizarry and Naquan Jacobs, were present in the Arlington Houses area, where Irizarry was selling drugs. (7/30/07 Tr. at 50:12-51:7). At some point in the afternoon, Irizarry went to Jeannette DeGracia's apartment to make a sale and was confronted by Bar Kim, one of DeGracia's visitors. (7/30/07 Tr. at 52:7-9). Kim demanded that Irizarry hand over the drugs, punched Irizarry in the face, and took the drugs

and approximately $300 from Irizarry. (7/30/07 Tr. at 53:6-24). Irizarry left DeGracia's apartment immediately and told Petitioner what happened, whereupon Petitioner ordered Irizarry to return to DeGracia's apartment with a 9 millimeter handgun to recover the money and drugs. (7/30/07 Tr. at 54:15-55:11).

Irizarry returned to DeGracia's apartment, however Kim had already left. (7/30/07 Tr. at 56:18-22). According to Irizarry's trial testimony, he returned to Petitioner, who responded "I told you to go up there and do what you have to do." (7/30/07 Tr. at 57:2-12). That evening, Irizarry again returned to DeGracia's apartment, accompanied by Petitioner and Jacobs. (7/30/07 Tr. at 57:19-20). DeGracia, Gloria Nazario, and Sandra Medina were in the apartment. (7/31/07 Tr. at 109:20-22; 7/30/07 Tr. at 167:16). Following a heated confrontation with DeGracia about Kim's whereabouts, according to Irizarry's trial testimony, Petitioner ordered Irizarry to shoot DeGracia. (7/30/07 Tr. at 58:14-59:5). Irizarry testified that he then pointed the gun at DeGracia and fired, striking her in the abdomen. (7/30/07 Tr. at 59:17-22). The bullet passed through DeGracia and hit Nazario in her leg. (7/31/07 Tr. at 171:4-15). Petitioner, Irizarry, and Jacobs fled the scene. (7/31/07 Tr. at 171:21-25). DeGracia was taken to a hospital, where she died from her injuries one month later. (7/30/07 Tr. at 44:21- 45:14).

### B. Identification and Arrest

On October 13, 2006, Nazario participated in a lineup conducted by Detective Longobardi and identified Petitioner as one of the men involved in the shooting. (7/31/07 Tr. at 237:1-242:6). One week later, Nazario also identified Irizarry in a lineup. (7/30/07 Tr. at 179:6-10). In the course of their investigation, the police attempted to secure footage of the video surveillance taken in the building's lobby and elevator, however their efforts were unsuccessful because the video had stopped recording between 7:45 p.m. and 8:42 p.m. – covering the period

of the shooting. (8/1/07 Tr. at 312:3-313:3). On September 5, 2007, Petitioner and Irizarry were charged with Murder in the Second Degree, Assault in the First and Second Degrees, and Criminal Possession of a Weapon in the Second Degree.

### C. Trial and Sentencing

All of Petitioner's pretrial motions, including a motion to suppress the out-of-court identifications, were denied. Petitioner was tried in a four-day trial, which began on July 30, 2007, in New York Supreme Court, Richmond County. Eleven witnesses testified for the prosecution, including four eyewitnesses: Jacobs, Irizarry, Nazario, and Medina. Each of the eyewitnesses testified that Petitioner came into the apartment with Irizarry and Jacobs.[1] Furthermore, Irizarry testified that Petitioner had yelled at him to "shoot the ladies." (7/30/07 Tr. at 59:5-8). Likewise, Nazario testified that during the incident, Petitioner directed Irizarry to "hurry up and shoot, hurry up and shoot." (7/31/07 Tr. at 171:1-2). Medina testified that she saw Petitioner whisper something to Irizarry before the shooting, although she did not hear what he said. (7/31/07 Tr. at 296:15-20). Irizarry also testified that he initially did not identify Petitioner as an accomplice and refused to cooperate with the police because he was afraid of Petitioner. (7/31/07 Tr. at 87:12-13.) Jacobs similarly testified that after the incident, Petitioner asked Jacobs to provide Petitioner with a false alibi, a request to which Jacobs initially complied because, *inter alia*, he "kind of feared him," but ultimately agreed to testify against him. (7/31/07 Tr. at 207:3-210:2). Additionally, Detective Michael Palm, testified about the security

---

[1] During trial Jacobs testified on direct examination that he was "sure" that Petitioner was present when the shots were fired. (7/30/07 Tr. at 202:11-13). Irizarry stated during trial: "I was standing in front of the doorway and David Mitchell was on my right hand." (7/30/07 Tr. at 58:11-12). Medina, who was inside the apartment, testified that Petitioner was positioned in the doorway on the left. (8/1/07 Tr. at 278:18-25). And Nazario presented consistent testimony that Petitioner was on the left side of the doorway during the shooting. (7/30/07 Tr. at 175:9-12).

3

tape explaining that there was a gap in the footage during the time of the incident, from 7:45 p.m. to 8:42 p.m. (8/1/07 Tr. at 312:23-25). Detective Longobardi testified about the October 13, 2006 lineup from which Nazario identified Petitioner (7/31/07 Tr. at 237:1-242:6). The defense did not put on any witnesses.

On September 5, 2007, Petitioner was convicted of a lesser included offense of Manslaughter in the First Degree, as well as Assault in the Second Degree and Criminal Possession of a Weapon in the Second Degree, and was acquitted of Murder in the Second Degree. Pet. at 1. Petitioner was sentenced as a second felony offender to concurrent determinate terms of twenty-five years, seven years, and fifteen years, respectively.

### D. The Direct Appeal

Petitioner appealed his conviction to the New York Supreme Court, Appellate Division, Second Department in February 2009 on the following grounds: (1) insufficient evidence for jury verdict, (2) denial of due process and ineffective assistance of appellate counsel, and (3) excessive sentence. (Def.'s App. Br. 4). On December 1, 2009, the Appellate Division affirmed Petitioner's conviction on all grounds. *People v. Mitchell*, 68 A.D.3d 784 (N.Y. App. Div. 2d Dep't 2009). On March 8, 2010, the Court of Appeals denied Petitioner's request for leave to appeal. *People v. Mitchell*, 14 N.Y.3d 803 (2010).

### E. Petition for Writ of Error *Coram Nobis*

On May 27, 2011, Petitioner filed a *pro se* petition for writ of error *coram nobis*, claiming that he was denied the effective assistance of appellate counsel where appellate counsel failed to raise a claim of ineffective assistance of trial counsel. (*Coram Nobis* Br. at 7). Petitioner alleged that his trial counsel was deficient in (1) failing to obtain surveillance footage that may have exonerated him, (2) failing to investigate the actual footage, and (3) failing to raise

a claim of police and prosecutorial misconduct, where the police and prosecutor failed to preserve the videotape and allegedly destroyed the footage. (*Coram Nobis* Br. at 7-8). On January 24, 2012, the New York Supreme Court, Appellate Division, Second Department denied Petitioner's *coram nobis* petition, holding that Petitioner had failed to establish that he was denied the effective assistance of appellate counsel. *People v. Mitchell*, 91 A.D.3d 887 (2012).

### F. The Habeas Corpus Petition

On May 21, 2012, Petitioner filed the instant timely petition for writ of habeas corpus.[2] Petitioner reasserts all claims asserted in his direct appeal and his application for a writ of error *coram nobis*. First, Petitioner argues that there was insufficient evidence for the jury to find him guilty beyond a reasonable doubt. (Pet. at 6). Second, Petitioner maintains that he was denied his due process right to a fair trial due to prosecutorial errors. (Pet. at 8). Specifically, Petitioner argues that the court permitted the prosecutor to (1) improperly bolster Nazario's identification testimony by eliciting from the detective that she positively identified Petitioner in a lineup and (2) improperly elicit from Petitioner's associates that they had not initially mentioned Petitioner to the police because they were frightened of him, and because he had tried to procure a false alibi from one of them – in violation of state evidentiary law. (Pet. at 8). Third, Petitioner contends that his sentence was excessive because he was not the shooter and because the probation department exaggerated his prior record. (Pet. at 9). Lastly, Petitioner argues that he

---

[2] On September 7, 2012, Respondent moved to dismiss Petitioner's habeas petition on the ground that it was not timely filed. Pursuant to Rule 7(a) of the Rules Governing § 2254 cases, this Court directed the parties to provide evidence of the date on which Petitioner's application for a writ of error *coram nobis* was delivered to prison authorities and whether the decision of the Appellate Division was served on Petitioner. This Court concluded that the AEDPA limitations period was tolled within a year of the date that Petitioner's conviction became final, and thus, that the instant petition was timely. Accordingly, on July 9, 2013, this Court denied Respondent's motion to dismiss.

5

received ineffective assistance of appellate counsel because his appellate counsel neglected to raise the argument that trial counsel was ineffective in failing to obtain security footage that could have exonerated him. (Pet. at 11).

## LEGAL STANDARD

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> [A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a); *see also Estelle v. McGuire*, 502 U.S. 62, 68 (1991). "[B]efore a federal court can consider a habeas application brought by a state prisoner, the habeas applicant must exhaust all of his state remedies," by 'fairly presenting' his federal claims to the state court. *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011); 28 U.S.C. § 2254(b)(1)(A). Where the claim was adjudicated on the merits by the state court, AEDPA requires federal courts to accord "substantial deference" to the state court's decision. *Fischer v. Smith*, 780 F.3d 556, 560 (2d Cir. 2015). The relevant section of AEDPA provides that:

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). In addition, a state court's factual findings are "presumed to be correct," and can only be overcome by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Petitioners bear the burden of proving violations of federal law by a preponderance of the evidence. *Jones v. Vacco*, 126 F.3d 408, 415 (2d Cir. 1997); *Pinkney v. Keane*, 920 F.2d 1090,

1094 (2d Cir. 1990) (explaining that because "[h]abeas corpus ... is an asymmetrical enterprise in which a prisoner seeks to overturn a presumptively valid judgment of conviction ... , the petitioner generally bears the burden of proof throughout the habeas proceeding.").

## DISCUSSION

### A. Jury Verdict Based on Insufficient Evidence

Petitioner's first claim is that the verdict was against the weight of the evidence and the prosecution failed to prove his guilt beyond a reasonable doubt.

"A 'weight of the evidence' argument is a pure state law claim grounded in New York Criminal Procedure Law ["CPL"] § 470.15(5), whereas a legal sufficiency claim is based on federal due process principles." *Correa v. Duncan*, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001). As explained above, state law claims are not cognizable on habeas review. *Estelle*, 502 U.S. at 67 ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.') (citation omitted). Accordingly, Petitioner's "argument that [the] verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus." *McKinnon v. Superintendent, Great Meadow Corr. Facility*, 422 F. App'x 69, 75 (2d Cir. 2011) (summary order) (collecting cases and noting that "the argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus").

To the extent that Petitioner challenges the legal sufficiency of the evidence supporting his conviction, his claim is subject to habeas review because it implicates federal due process principles. *Edwards v. Superintendent, Southport C.F.*, 991 F. Supp. 2d 348, 372 (E.D.N.Y. 2013) ("[A] legal sufficiency claim ... is based on principles of due process."). However, Petitioner "bears a heavy burden" in challenging the legal sufficiency of evidence supporting

his conviction "because a reviewing court must consider the evidence 'in the light most favorable to the prosecution' and uphold the conviction if '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Aguilar*, 585 F.3d 652, 656 (2d Cir. 2009) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in original).

Here, Petitioner does not meet the heavy burden necessary to demonstrate legal insufficiency. During trial, Petitioner was identified by four separate eyewitnesses as having been present on the day of the incident and involved in the shooting. Two of the witnesses, Irizarry and Jacobs, were Petitioner's associates, whose identification of Petitioner based on their prior acquaintance is particularly compelling. Two other eyewitnesses, Nazario and Medina, also identified Petitioner and had ample opportunity to observe Petitioner in the apartment and no motive to lie. All of the witnesses testified consistently that Petitioner entered the apartment with Irizarry, and spoke with Irizarry immediately before he shot DeGracia. Nazario and Irizzary actually heard Petitioner order Irizzary to shoot DeGracia, while Medina testified that she saw Petitioner whisper to Irizarry immediately before the shooting but did not hear what he said. Moreover, Petitioner's phone number was the contact number that DeGracia used to purchase the drugs which first brought Irizarry to her doorstep. Thus, there was ample testimony and circumstantial evidence supporting Petitioner's conviction. Accordingly, Petitioner's application for habeas relief on the grounds of legal insufficiency is denied.

## B. Denial of Due Process

As the second basis for attacking his conviction, Petitioner reasserts two evidentiary errors and a summation error which he raised on direct appeal. Petitioner contends that he was deprived of his due process right to a fair trial when the trial court permitted the prosecutor to

(1) improperly bolster Nazario's lineup identification by eliciting testimony about the lineup from the detective, (2) improperly impeach its own witnesses by eliciting testimony from Irizzary and Jacobs about their initial refusal to identify Petitioner, and (3) argue on summation that appellant was a drug kingpin absent support in the record. (Def.'s App. Br. 25).

"Under Supreme Court jurisprudence, a state court's evidentiary rulings, even if erroneous under state law, do not present constitutional issues cognizable under federal habeas review." *McKinnon*, 422 F. App'x at 73 (citing *Hawkins v. Costello*, 460 F.3d 238, 244 (2d Cir. 2006); *see also Estelle*, 502 U.S. at 67. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 67–68; *DiGuglielmo v. Smith*, 366 F.3d 130, 137 (2d Cir. 2004) ("We are not empowered to second-guess" the Appellate Division's evidentiary rulings.); *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (The Supreme Court has "repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). "Therefore, unless the challenged evidentiary rulings in the state proceedings affect the fundamental fairness of those proceedings, the claims are not properly reviewable in this context." *McKinnon*, 422 F. App'x at 73; *see also Taylor v. Curry*, 708 F.2d 886, 891 (2d Cir. 1983).

Here, the Appellate Division found that the trial court properly allowed the prosecutor to elicit testimony from Jacobs about Petitioner's attempt to procure a false alibi, but found that it was a harmless evidentiary error for the prosecutor to elicit the reason, *i.e.*, fear of Petitioner. It is not in the providence of this Court to reexamine the Appellate Division's determinations of state law. In any event, "[i]n order to prevail on a claim that an evidentiary error deprived the defendant of due process under the Fourteenth Amendment, he must show that the error was so

pervasive as to have denied him a fundamentally fair trial." *Collins v. Scully*, 755 F.2d 16, 18-19 (2d Cir. 1985) (citing *United States v. Agurs*, 427 U.S. 97, 108 (1976)). Even if Jacobs' testimony that Petitioner had attempted to procure a false alibi had been erroneously admitted under state law, this Court is constrained to consider whether the error, "viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." *Collins*, 755 F.2d at 18-19. Here, even if there had been a state evidentiary error in Petitioner's case, it was not sufficiently material to rise to the level of constitutional error. As explained above, there was ample evidence supporting the conviction, and Jacobs' testimony about Petitioner's allegedly suspicious conduct in the days after the shooting has no bearing on the overwhelming testimony that placed Petitioner at the scene of the crime.

The Appellate Division found that the remainder of Petitioner's evidentiary claims, including Petitioner's claims that the prosecutor was permitted to elicit improper testimony from Irizzary in violation of C.P.L. § 60.35 and to make inflammatory arguments on summation were not preserved for appellate review. *Mitchell*, 68 A.D.3d at 785. Pursuant to New York's contemporaneous objection rule, an appellant must preserve an issue for appeal by objecting on that ground during trial. C.P.L. § 470.05. Generally, a New York appellate court will deny – as defaulted – consideration of a claim that has not been first asserted in trial court. If "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule," then "federal habeas review of the claims is barred unless the prisoner can demonstrate" first, "cause for the default," and second, "actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Thus,

"[a] party whose claim is rejected on appeal in state court for failure, to comply with ... New York's contemporaneous objection rule, may be precluded from raising that claim in a federal habeas corpus petition." *Drake v. Woods*, 547 F. Supp. 2d 253, 261 (S.D.N.Y. 2008). The procedural bar applies even where the state court has "ruled in the alternative on the merits of the federal claim." *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990). Where, as here, "the state court has actually and explicitly relied upon procedural default to dispose of a claim, there is an 'adequate and independent state ground' for the judgment, and federal habeas review is prohibited." *Edwards*, 991 F. Supp. 2d at 366. Thus, Petitioner's remaining evidentiary claims are procedurally barred.

### C. Excessive Sentence

Petitioner claims that his sentence was unduly excessive in light of the fact that he had a relatively minor criminal record, he was not the shooter, and the actual shooter received a significantly shorter sentence than the one Petitioner received. (Def.'s App. Br. 32). Petitioner is incarcerated on charges of Manslaughter in the First Degree, Assault in the Second Degree, and Criminal Possession of a Weapon in the Second Degree, for which he was sentenced to concurrent determinate terms of twenty-five, seven, and fifteen years, respectively. On reviewing Petitioner's direct appeal, the Appellate Division found that "the sentence imposed was not excessive." *Mitchell*, 68 A.D.3d at 890. Because the Appellate Division adjudicated Petitioner's claim on the merits, AEDPA deference applies. 28 U.S.C. § 2254(d).

Petitioner's claim is not cognizable on federal habeas review so long as "petitioner's sentence is within the range prescribed by state law." *Edwards*, 991 F. Supp. 2d at 372; *see also White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992). The sentences imposed on Petitioner in

this case were within the legally prescribed ranges under state law and are therefore not unduly harsh or excessive. Petitioner's application for habeas relief on his third ground is thus denied.

### D. Ineffective Assistance of Appellate Counsel

As the fourth basis for attacking his conviction, Petitioner argues that he was denied effective assistance of appellate counsel in violation of his Sixth Amendment right to counsel. Ineffective assistance of counsel claims are governed by the two-prong standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). "Although it was born in the context of ineffective assistance of trial counsel, *Strickland's* two-prong test applies equally to claims of ineffective assistance of appellate counsel on a defendant's first appeal as of right." *Aparicio v. Artuz*, 269 F.3d 78, 95 (2d Cir. 2001).

Under *Strickland*, counsel is presumed to have provided adequate assistance and to have exercised reasonable professional judgment in making all significant decisions. *Strickland*, 466 U.S. at 690. To overcome this presumption and to prove a deprivation of the Sixth Amendment right to effective assistance of counsel, a habeas petitioner must show that (1) "the identified acts or omissions were outside the wide range of professionally competent assistance" and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 671, 694. "A lawyer's decision not to pursue a defense does not constitute deficient performance if, as is typically the case, the lawyer has a reasonable justification for the decision." *DeLuca v. Lord*, 77 F.3d 578, 588 n.3 (2d Cir. 1996). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690-91. On federal habeas review, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

In his application for a writ of error *coram nobis*, Petitioner argued that his appellate counsel was ineffective for failing to raise ineffective assistance of trial counsel, where trial counsel failed to introduce a security tape from the building where the shooting took place, which Petitioner believes would have exonerated him, and failed to obtain footage from the gap in the tape. (*Coram Nobis* Br. at 7-8). Petitioner claimed that although there was a lengthy gap in the footage recovered, encompassing the time of the shooting, the video was "highly relevant" to his claim that he was not in the building during the incident and would have put the credibility of the state witnesses into question. (*Coram Nobis* Br. at 12). The Appellate Division rejected these claims without "explicat[ing] a coherent rationale for its rejection of a petitioner's claim, but that rejection [was] nevertheless ... clearly on the merits," and is thus reviewed for whether it was an unreasonable application of *Strickland*. *Aparicio*, 269 F.3d at 94.

The Appellate Division reasonably concluded that appellate counsel was not deficient under *Strickland*. "Counsel is not obliged to advance every nonfrivolous argument that could be made." *Aparicio*, 269 F.3d at 95. Indeed, appellate counsel "need not (and should not) raise every non-frivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). As the Supreme Court has noted, the "process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy.'" *Smith v. Murray*, 477 U.S. 527, 536 (1986) (internal quotation marks and citations omitted).

Appellate counsel reasonably declined to raise appellate arguments regarding the surveillance tape. Trial counsel reasonably declined to admit the tape with the one hour gap covering the time of the shooting, as the tape had little probative value with a gap. The police

were unable to locate the missing portion of the footage during their investigation, although they recovered the tape on which the footage should have been. Searching for the footage elsewhere would likely have been time intensive and futile, given that the footage was "missing" due to a gap in the tape, as opposed to a misplaced physical tape. Thus, trial counsel reasonably chose to concentrate defense efforts on potentially fruitful investigations. The decision not to further investigate the footage was a reasonable tactical decision and as such, does not amount to ineffective assistance. Thus, appellate counsel reasonably decided not to include that claim in the appeal. Petitioner's ineffective assistance of appellate counsel claim is denied because he fails to meet the first prong of the *Strickland* standard.

Moreover, even assuming that Petitioner had met the first prong, he has failed to satisfy prong two – showing that he was prejudiced by appellate counsel's conduct. Given the overwhelming evidence establishing that Petitioner was present during the shooting, the surveillance tape, even if it had shown Petitioner did not enter or exit the building during the hours immediately before and after the shooting, would not have altered the outcome of the trial. The tape would not have undermined the consistent eyewitness testimony placing him next to the shooter, given that he could have already been in the building before the shooting, remained in the building after the shooting, or used a different entrance and exit. Thus, even if appellate counsel had raised this argument and it was an error for trial counsel not to pursue the tape, the Appellate Division would have found any error to have been harmless. *Lynch v. Dolce*, No. 14-1675-PR, --- F.3d ---, 2015 WL 3771891, at *10 (2d Cir. June 18, 2015) (appellate counsel's error is prejudicial when "there is a reasonable probability that the outcome of the appeal would have been different; in other words, whether the Appellate Division likely would have concluded that [there] ... was error, and that the error was not harmless beyond a reasonable doubt.").

Therefore, Petitioner has failed to demonstrate that he was prejudiced by his appellate counsel's failure to make these arguments on appeal. The Appellate Division's denial of Petitioner's *coram nobis* application on the grounds of ineffective assistance of appellate counsel is not contrary to, or an unreasonable application of *Strickland*, and his habeas petition on these grounds is denied.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is denied. Because Petitioner has not demonstrated a basis for federal habeas relief under 28 U.S.C. § 2254, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2). The Clerk of the Court is respectfully directed to enter judgment accordingly and close this case.

**SO ORDERED.**

/s/ Sandra L. Townes
SANDRA L. TOWNES
United States District Judge

Dated: August 26, 2015
Brooklyn, New York